UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Exeter Hospital

    v.                                  Civil No. 10-cv-377-JL
                                         Opinion No. 2011 DNH 135

New England Homes, Inc.

**MEMORANDUM ORDER**

    The question in this case is whether plaintiff Exeter Hospital, having erroneously refunded a payment it received from defendant New England Homes, Inc.'s group employee medical plan, is entitled to a return of that money, even though the plan is now defunct.  Both parties[1] agree that the plan, and thus the hospital's claim for benefits (assigned to it by the covered employee) is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  They also agree that the plan, before going defunct, should have returned the money.  They disagree, though, on whether the hospital can recover from New England Homes as the plan's administrator, rather than from the plan itself.  They also disagree over whether the hospital's claim should be barred for failure to exhaust administrative remedies.  See, e.g., McMahon v. Digital Equip. Corp., 162 F.3d 28, 40 (1st Cir. 1998) (discussing "the discretionary, court-adopted exhaustion rule for ERISA claims").  This court has

---

    [1]The court confirmed this agreement with counsel at oral argument.

subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1) (ERISA).

Both parties have moved for judgment on the administrative record, see L.R. 9.4(c), which they have summarized in a joint statement of material facts, see L.R. 9.4(b); document no. 18. After hearing oral argument, this court grants judgment to New England Homes. It is undisputed that Exeter Hospital failed to exhaust administrative remedies available under the plan (specifically, to appeal the denial of its claim to the plan's administrator, New England Homes). The hospital's position seems to be[2] that such an appeal would have been futile. See, e.g., Madera v. Marsh USA, Inc., 426 F.3d 56, 62 (1st Cir. 2005) ("Futility is an exception to ERISA's exhaustion requirement."). But New England Homes insists otherwise, and there is no evidence in the administrative record to support the hospital's position. So its ERISA benefits claim is barred for failure to exhaust. In light of that ruling, this court need not resolve the more difficult issue of whether New England Homes is a proper defendant on such a claim.

---

[2] "Seems to be" is the best the court can do here, because as noted infra at 8, the petition never squarely advanced the futility argument in its brief, or even mentioned the word "futility" until oral argument on the summary judgment motions.

2

## I. **Applicable legal standard**

The standard of review in an ERISA case differs from that in an ordinary civil case, where summary judgment is designed to screen out cases that raise no trialworthy issues. See, e.g., Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). "In the ERISA context, summary judgment is merely a vehicle for deciding the case," in lieu of a trial. Bard v. Boston Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006). Rather than considering affidavits and other evidence submitted by the parties, the court reviews the denial of ERISA benefits based "solely on the administrative record," and neither party is entitled to factual inferences in its favor. Id. Thus, "in a very real sense, the district court sits more as an appellate tribunal than as a trial court" in deciding whether to uphold the administrative decision. Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002).

Ordinarily, the question in an ERISA case is whether the decision to deny benefits was "reasoned and supported by substantial evidence," Medina v. Metro. Life Ins. Co., 588 F.3d 41, 45 (1st Cir. 2009), in which case it must be upheld, even if the court would have made a different decision. In this case, however, both parties agree that denial of benefits was erroneous; even New England Homes concedes that it would have made a different decision. See document no. 21-1, at 6. So this

court need not resolve the parties' (unnecessary) debate over the proper degree of deference to give that decision.  Instead, the question is whether Exeter Hospital's otherwise meritorious claim for ERISA benefits should be barred for failure to exhaust administrative remedies.

## II. Background

Donald Reynolds, then an employee of New England Homes, suffered a heart attack while at work in June 2007.  He spent the next four days at Exeter Hospital and later returned for another four-day stay in July 2007.  Throughout that period, he was covered by a group employee medical plan funded by New England Homes, with reinsurance from HCC Life Insurance Company.  Exeter Hospital billed the plan for both hospital stays.  The plan's third-party claims administrator, Patient Advocates, LLC, initially determined that the bills were for a "job related injury" and thus were "not covered."  But it reversed that decision in October 2007 and approved both claims.  The plan paid the hospital's bills in November 2007.  The cost of the July 2007 care was $49,368.98.

Meanwhile, because the heart attack happened while Reynolds was work, he also submitted a claim for benefits to New England Homes' worker's compensation carrier, Comp-Sigma Ltd.  Comp-Sigma concluded that some of the July 2007 care at Exeter Hospital was

4

covered by worker's compensation, but that most of it related to a pre-existing medical condition and thus was not covered. In December 2008, Comp-Sigma sent Exeter Hospital a $10,550.17 check for the covered portion. Mistakenly believing that Comp-Sigma would pay for all of the July 2007 care, the hospital refunded to Patient Advocates in January 2009 the entire amount that New England Homes' medical plan had paid for that care. Patient Advocates, in turn, refunded much of that amount to the reinsurer, HCC Life, in February 2009.

Exeter Hospital realized in February 2009 that worker's compensation would cover only the $10,550.17 portion that Comp-Sigma had already paid. Within days, the hospital sent a "corrected" claim to Patient Advocates for $38,818.81, which represented the unpaid portion of the July 2007 care. Patient Advocates denied the hospital's request in March 2009, explaining that worker's compensation coverage was "prime" and that, in any event, the request was "beyond the timely filing limit" because more than a year had passed since the dates of service. Under the plan, that decision could be appealed to the plan administrator, New England Homes, within 180 days. Neither the hospital nor Reynolds filed an appeal. In April 2009, during the appeal period, the plan was terminated (pursuant to an amendment approved the previous year).

In March 2010, about a year after the denial of its "corrected" claim and about 180 days after the appeal period expired, Exeter Hospital again submitted a claim for $38,818.81, this time directly to New England Homes.  New England Homes forwarded the claim to Patient Advocates, which advised the hospital in April 2010 that it was "unable to process this claim as the medical plan no longer exists and our administrative services have also been terminated."  Exeter Hospital made another demand for payment to New England Homes in June 2010, which was also denied.

Having received an assignment from Reynolds of his claim for benefits under the plan,[3] Exeter Hospital brought suit against New England Homes in New Hampshire Superior Court in July 2010, seeking $38,818.81 in benefits, see 29 U.S.C. § 1132(a)(1) (authorizing suit "to recover benefits due . . . under the terms of [an ERISA] plan"), plus attorneys' fees, see id. § 1132(g) (providing that "the court in its discretion may allow a reasonable attorney's fee" to the prevailing party in an ERISA case).  New England Homes removed the case to this court.  See 28 U.S.C. § 1441.

---

[3]See, e.g., Paul J. Schneider & Brian M. Pinheiro, ERISA: A Comprehensive Guide § 8.03[A], at 8-6 (3d ed. 2008) ("The assignment of health care benefits from participants and beneficiaries to health care providers confers standing to sue to recover the benefits that have been acquired through the assignment.").

### III.  Analysis

#### A.  *Exhaustion of administrative remedies*

"A plaintiff who wishes to raise an ERISA claim in federal court must first exhaust all administrative remedies that the fiduciary provides."  Medina, 588 F.3d at 47 (citing Madera, 426 F.3d at 61); Drinkwater v. Metro. Life. Ins. Co., 846 F.2d 821, 826 (1st Cir. 1988).  That requirement is not expressly set forth in the statute; rather, it is a "discretionary, court-adopted exhaustion rule" designed to promote efficient use of the administrative procedures that ERISA requires and to address various other "policy concerns."  McMahon, 162 F.3d at 40 (citing Kross v. W. Elec. Co., 701 F.2d 1238, 1243-45 (7th Cir. 1983)).  The rule has some exceptions, however, including that a plaintiff "is not required to exhaust his administrative remedies in those instances where it would be futile for him to do so."  Madera, 426 F.3d at 62.  It is the defendant's burden to show failure to exhaust and, if necessary, the plaintiff's burden to show that the futility exception applies.  See, e.g., Drinkwater, 846 F.2d at 825.

There is no dispute here that Exeter Hospital failed to exhaust its administrative remedies, in that it did not appeal the claims administrator's decision to New England Homes within 180 days as provided in the plan.  See, e.g., Madera, 426 F.3d at 62 (finding that plaintiff failed to exhaust administrative

remedies where he "made no effort to avail himself of the Plan's appeal procedures"); Thomas v. Eastman Kodak Co., 183 F.3d 38, 51-52 (1st Cir. 1999) (explaining that ERISA "requires employees to take full advantage of employer-internal appeals processes before bringing suit to recover denied benefits") (citing McMahon, 162 F.3d at 40); Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir. 1998) (plaintiff "is required to attend to the plan's internal appeal process first," unless it would be futile) (citing Drinkwater, 846 F.2d at 825).

Exeter Hospital seems to take the position that an administrative appeal would have been futile (albeit without explaining precisely why that is so or, indeed, even using that word). But New England Homes insists that if the hospital had timely appealed the claims administrator's decision, then its request for benefits "would have been honored as a refund request and the error untangled" while New England Homes still had the ability to seek coverage from its reinsurer. The hospital has not pointed to any evidence in the record that suggests otherwise. Our court of appeals has made clear that a "blanket assertion [of futility], unsupported by any facts, is insufficient to call the futility exception into play." Madera, 426 F.3d at 62 (citing Drinkwater, 846 F.2d at 825). Here, it is debatable whether the hospital has even made a "blanket assertion" of futility.

Perhaps the hospital could argue that, because the plan was terminated midway through the appeal period, a timely appeal made subsequent to the plan's termination would have been rejected anyway on the ground that the plan was defunct. Cf, e.g., Parlanti v. MGM Mirage, No. 05-cv-01259, 2007 WL 869600, at *5 (D. Nev. Mar. 20, 2007) (concluding that it "would clearly establish futility" if the plan was terminated and the plaintiff was told that the plan could not process claims anymore or provide any other administrative remedies). But that is pure speculation on this record. As Exeter Hospital conceded at oral argument, there is no evidence that New England Homes or the claims administrator refused to process other claims or appeals that were pending at the time of the plan's termination. The plan expressly states that claimants retain their "rights . . . to Covered Charges incurred before termination."

In sum, it is undisputed that Exeter Hospital failed to exhaust the administrative remedies available under the plan. As in Madera, the record "hardly demonstrate[s] that it would have been pointless for [the hospital] to pursue the Plan's procedures . . . for appealing the decision to deny [it] benefits." 426 F.3d at 63. So the hospital's claim for benefits is barred by ERISA's exhaustion rule.[4]

---

[4] At oral argument, Exeter Hospital raised for the first time another theory: that ERISA's exhaustion requirement was never triggered because the claims administrator's letter notifying the

**B.   *Recovery from plan administrator***

In light of that ruling, this court need not resolve the other issue raised by the parties' submissions:  whether New England can be held liable, as plan administrator, for the plan's

---

hospital of its decision failed to set forth the reasons for the decision, the procedures for administrative appeal, and other information required by 29 C.F.R. § 2560.503-1(g).  See, e.g., Madera v. Marsh USA, Inc., 426 F.3d 56, 62 (1st Cir. 2005) (noting that several district courts have endorsed that theory but concluding that, "[e]ven if we were bound by these district court decisions," the theory was not applicable in that case); 29 CFR § 2560.503-1(l) (stating that ERISA claims shall be "deemed . . . exhausted" where the plan fails to "follow claims procedures consistent with the requirements of this section").

"This court generally will not consider theories raised for the first time at oral argument, out of fairness to adverse parties and the court."  Prince v. Metro. Life Ins. Co., 2010 DNH 046, 22 n.11 (citing Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 309 n.19 (D.N.H. 2008)); see also, e.g., de Feyter v. FAA, 2011 DNH 049, 13 n.5; Pure Barnyard, Inc. v. Organic Labs., Inc., 2011 DNH 035, 21; 108 Degrees, LLC v. Merrimack Golf Club, Inc., 2010 DNH 054, 8 n. 3.  Exeter Hospital has not provided, nor can this court discern, any reason to make an exception to that rule in this case, particularly given that Exeter Hospital not only failed to raise the new theory in its briefing, but also failed to raise it during a conference call, held about a month before oral argument, at which the exhaustion issue was discussed.

Moreover, even if the new theory had been properly raised, it would still be rejected on the merits.  As Exeter Hospital acknowledged at oral argument, the claims administrator also sent a notice of its decision to the covered employee, Reynolds.  That notice did set forth the reasons for the decision and the procedures for administrative appeal.  See Admin. R. at 87-88. Because the hospital brought this claim for benefits as Reynolds' assignee--i.e., standing in his shoes--the notice he received is pertinent here.  At oral argument, Exeter Hospital could not identify any authority for the proposition that a notice setting forth the reasons for the denial of benefits and the procedures for administrative appeal is insufficient to trigger ERISA's exhaustion requirement.

failure to pay benefits.  That is a more difficult issue.  "Some [courts] hold that only the plan may be sued for benefits.  Some courts also permit suits against the plan administrator.  The law is sufficiently unclear that one can find appellate decisions on both sides of the issue in the same circuit."  Jay Conison, Employee Benefit Plans in a Nutshell 188-89 (3d ed. 2003) (citing cases); compare, e.g., Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 10 (1st Cir. 2008) ("usually either the plan or the party who controls its administration can be sued" in an ERISA benefits case) with Evans v. Akers, 534 F.3d 65, 72 (1st Cir. 2008) ("a suit 'to recover benefits' under § 502(a)(1)(B) is brought against the plan itself (or the administrators in their official capacities)," not against "the plan's fiduciaries . . . in their personal capacities").

It is worth noting, however, that even if the plan administrator "usually" can be sued for ERISA benefits, Negrón-Fuentes, 532 F.3d at 10, New England Homes makes a strong argument that this should be one of the unusual cases where it cannot.  The erroneous decision to deny benefits was made by the claims administrator, not by New England Homes.[5]  Because Exeter Hospital failed to appeal the claims administrator's decision, New England Homes never had occasion to review and correct that

---

[5]Furthermore, the erroneous decision was a response to Exeter Hospital's own mistake in refunding the payment.

11

error.  Moreover, because the claims administrator refunded the payment in question to the reinsurer, and the plan has since been terminated, New England Homes has no ability to correct the error now, except by paying the hospital out of its own pocket for a claim that would have been reinsured.  Under the circumstances, holding New England Homes liable for the plan's failure to pay benefits would arguably be unfair.

**IV.  Conclusion**

For the reasons set forth above, New England Homes' motion for judgment on the administrative record[6] is GRANTED, and Exeter Hospital's motion for judgment on the administrative record[7] is DENIED.  The hospital's claim for ERISA benefits is barred for failure to exhaust administrative remedies.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 1, 2011

cc:  Jack S. White, Esq.
     Paul McEachern, Esq.

---

[6]Document no. 21.

[7]Document no. 20.